Oral argument, 15 minutes per side. Mr. Crawley, for the appellant. You may proceed. Thank you, Your Honor. Good morning. I may please the court. My name is Shane Crawley. I represent the United States. I would like to reserve three minutes for rebuttal, please. The district court erred when it suppressed the defendant's first inculpatory statement. After the government had rested its case, because the statement had been made after a Miranda warning that did not contain the so-called fifth warning that a suspect can cease questioning at any time, that courts, including this one, have rejected repeatedly as not required by Miranda. The district court then rebuffed the prosecutor's request to brief or argue this issue, and simply said that if she would like, she could have an additional five minutes to amend her closing. The district court compounded this error when it suppressed, unprompted, the defendant's second inculpatory statement five months after trial. Despite the fact that the defendant did not challenge the Miranda warnings given before the second statement, or reference at all, except on a passing footnote in his motion for a judgment of acquittal, the district court surprised the government and the defendant in February when it suppressed the second statement, and then concluded that without that second statement... Is that second statement the one that the judge said to the defense attorney, you're not challenging this statement, are you? That's correct, Your Honor. That's the one he affirmatively stated after the government arrested his case, that he was not challenging. And you contend that that's a waiver? Your Honor, I recognize that waiver is no longer a concept per soto in the changes to Rule 12, but I think here, where you're given the opportunity to actually address the issue, I think that's akin to an abandonment, which would then waive the ability to raise that after the fact. But here, this is not even a situation where he did raise this. This is all on the district court. The district court raised this issue unprompted, and then suppressed it sua sponte without any briefing or argument from the parties. Respond. Yes, Your Honor. Rebut a little bit what you just said. It's true that after the criminal Rule 12 amendments, they don't use the word waiver anymore. That doesn't mean you can't waive something. You're allowed to have the judge say, okay, I heard there was some talk about a motion to express. Is there going to be a motion to express? No, there is not. We've thought about it. We did an analysis of it. We're not going to bring a motion. That's a waiver. It's knowing, voluntary, and a story. I would agree, Your Honor. In fact, I think that here, where the statements were admitted on Day 2 of trial, and then the defendant turns around on Day 3 of trial, after the government had rested its case, no less, but a day later, and then turns around and tries to suppress something that he's already said he has no objection to, I would also agree that that is a waiver. So that's dealing with the first statement. Is that right? Well, frankly, Your Honor, he did not object to the admission of either statement. When they came in? When they came in. That's correct, Your Honor. But when you come to the day in trial, when the defendant's counsel does start to talk about the problem, that is the first statement. Am I right or not? The defendant only, yes, Your Honor, the defendant only raised an issue with respect to the Miranda warnings on the first statement. There was never any issue with respect to the second Miranda warnings, except on the part of the district court. And again, as I said, neither party knew this was coming. So I'm sort of curious, in terms of waiver issues, what if a defense counsel says in response to a district judge, are you going to raise an issue with regard to a particular statement? And the defense counsel says, no, I'm not going to raise an issue. And then defense counsel suddenly, at some point in time, reads a definitive Supreme Court decision that says that this was an absolutely wrong thing to allow the statement in. You're saying basically the defendant has no rights whatsoever. Is that right? Your Honor, I wouldn't go that far. I think then the defendant would have the right, perhaps in a 20-55, to allege ineffective assistance of counsel. Okay, so that's the vehicle that a defendant would have. Certainly, Your Honor. If you think back to Rule 12, I mean, this has an important policy implication. The government cannot change its position in trial. It cannot appeal an erroneous ruling, like this, for example. The only reason, the only way this court can address what is clearly erroneous, in fact, the defendant concedes that the court was wrong about the so-called fifth warning. This court can only remedy this situation if you agree that the second statement should not have been suppressed, reinstate that, and then address the ruling on the motion for a new trial. And here, it's just flat wrong. There is no question that this court had said the fifth warning is not required. And that was the only basis for the district court's ruling to suppress that first statement. You know, I don't know if I agree with your answer to Judge Moore's question. I don't think I know the answer to it. But I mean, I think the one thing that's important is to distinguish waivers from forfeitures. Forfeitures are where you just forget. You just don't do it. And there's a lot more discretion about that during trial. And of course, there's plenary review later. But I don't really know the answer to the question. You know, halfway through trial, the definitive case comes down. I can imagine a lot of judges, frankly, having the authority to say, you know, I realize you waived that. And I realize why you're now raising it. And I can understand why you're doing what you're doing. And I'm going to allow the argument to be made. I don't know the answer to that. But I'm not 100 percent sure you're right about it either. I'm not sure, Your Honor. This is certainly something we debated, the implications of Rule 12 and how this should proceed in the context of a trial. And I think the important thing here is, from a policy perspective, to suppress evidence midstream is certainly something that should happen in rare circumstances. There will be situations where perhaps it should happen. But it should happen minimally because of the judgment of acquittal was granted. We have the power to be looking certainly at whether the judgment of acquittal was properly granted. Certainly, Your Honor. And that only implicates the second statement. So let's focus on that. Yes, Your Honor. Certainly the crux of this is whether or not this Court agrees the second statement should have been suppressed. And again, procedural irregularities and whether or not a Court ever has the authority to do this unprompted. And certainly whether it should do this without notice to the parties. The issue is, did the Miranda warnings given, and I would note these were the third set of Miranda warnings given that day, did those Miranda warnings adequately convey the substance of Miranda? And then did the defendant voluntarily waive his Miranda rights? And then did he knowingly and intelligently do? With the adequacy of the warnings, this is an issue that's reviewed de novo. And I think Judge Dr. you mentioned this last year in the Wooten case. This is an issue reviewed de novo. We're looking at whether or not, from a common sense reading, the warnings that were provided to the defendant comprehensively conveyed Miranda. And here and we'll certainly be focusing on this more heavily in the companion appeal. But here we have a situation where the ATF agent is reading from the written waiver form. He's reading through his rights. As I note, this is the third time he's gone over this. But he's reading through the rights and he says, anything you say can and will be used against you in court. The defendant interrupts and says, will we be going to court? And the ATF agent says, no, I'm just saying in general, anything you say can and will be used against you in court. This was not a blanket assertion that you will never be prosecuted, that you will never go to court. A common sense reading of this is simply the ATF agent saying, these are your rights. I'm telling you what they are. I can't talk to you until I read all these to you. And then you agree, you understand them and waive them. And that's very clear from the audio recording. What about, I was just listening to that tape, and what about the feature that the defendant was constantly asking to see the search warrant? And the agent was constantly saying, hey, that's a different thing, and oh, it's in the back room, and really essentially denying the defendant the ability to see the search warrant until quite late in this whole interaction. Well, I think there are two portions to that, Your Honor. And the district court held that that was coercion, that he was dangling the carrot of the warrant in order to show that. And to answer your question, the first issue is the defendant was trying to distinguish between the warrant and the waiver. And there were a lot of questions back and forth. He was concerned that if he signed that, that would preclude his ability to challenge the warrant. When the ATF agent said, no, this form is just so we can talk about what's going on, that's when he waived. But turning to the coercion issue, the ATF agent made very clear, I don't have a copy. I'll get a copy for you. I don't have a copy. I'm not required to show it to you at this time, just at some point today, but I'll get a copy for you. And Mr. Crumpton is very persistent, as I'm sure you've noted by now. And at some point, the agent then stops everything and says, look, to another officer, can you go get a copy of this so I can show him? And then he walks through the exact warrant and what it was for. This is not a situation where the agent was trying to coerce him into waiving his right. Keep in mind, at this point, he's already been talking for some time. So was the search warrant given? I can't remember being clear about this. Was the search warrant shown to Crumpton before Crumpton signed the waiver or after? It was after, Your Honor. It was, I would say, a good two-thirds of the way through that audio recording. That's correct, Your Honor. The district court found that to be coercion. But then again, the district court also found that the agent coerced him by taking him out into the cold when there weren't enough law enforcement personnel to monitor all the people. And all of the people were being kept outside on the front steps. It was not that it was cold and he was being taken out there. It was that it was early October in Michigan and a crisp fall morning. That's not coercion. And if we look at how this court is to analyze both whether or not Miranda is voluntarily waived or whether the waiver is knowing and intelligently made, we look at the totality of circumstances. And here, it's important to keep in mind, this is a 35-year-old man with an extensive record of encounters with the criminal justice system. He was, at this point, I believe, a seven-time convicted felon, five of them for drugs. There's no question that he would have known his rights. That does not preclude, that doesn't mean he doesn't need to hear them every time, but there's no question he would have known his rights. And in fact, if we look at how he responds to the agent, this makes crystal clear that he knew both his rights and the consequences of waiving them. Because Kelvin Crumpton answered the agent's questions repeatedly, except when it came to the issues of drugs. And in this house, let's recall that there was heroin, cocaine, crack cocaine, and marijuana found all throughout the house. Digital scales, packaging materials, and so forth. Any time the agent asked about the amount of weight... I'm sorry to interrupt you, but I just want to make sure I get one thing straight. So I understand on the second statement that relates to the Rule 29. If you're right about the second statement, your position is the judge had no authority to do the Rule 29. That's correct. Well, not no authority, but was incorrect. And that would mean the verdict would be reinstated. Why is the first statement in the new trial motion still relevant? I mean, what would be the ground for... If you vacate the Rule 29, wouldn't you necessarily vacate the new trial order as well? And then I'm not even sure I understand why we talk about the first statement. Well, perhaps the answer is that you simply vacate the order for the new trial and don't turn to the first motion. I certainly think the first motion... I second Judge Sutton. Why would the first motion be relevant? You won. The jury convicted. The first statement was out. And perhaps that is the right answer, Your Honor. I will acknowledge that this is convoluted to a certain extent, how to deal with the procedural remedy. You don't think I'm missing something in thinking about it that way? Okay, that's all I want to know. No, Your Honor. And I see my time has expired. Should I complete the question or do it all? You can complete the answer. I'm sorry. You did answer. Very good, Your Honor. Thank you. Thank you. You have your rebuttal. Good morning, Honorable Panel. My name is Martin Burris, and I represent Calvin Alexander Crumpton, the appellee in this matter. And as I've indicated in my brief, and since I'll third the panel's conclusion that I really don't think that the first statement is relevant at all, not only did the... You would agree if the Rule 29 acquittal order, I know this is not your argument, but if the government's right about that, it would seem to follow the new trial motion order would have to be vacated as well, and then there's no reason to get to the first statement. That would be my position, yes. So I won't spend much time with that other than to say that there was no prejudice. The jury found Mr. Crumpton guilty of both counts, and irrespective of whether the judge made the improper ruling or not, it didn't affect the verdict. With regard to the second Miranda warning, it woes me to dissect further the learned judge's opinion that meticulously dissected the tape, and I see that the court has listened to the tape. I think that the bottom line on the judgment of acquittal is the fact that Mr. Crumpton was clearly confused about what his rights were in the first place. As the court noted, he was constantly asking to see the... First he said, what warrant do you have, search warrant, arrest warrant, whatever you have, and I think the district court was correct in analyzing that to say that the agent was dangling the carrot to Mr. Crumpton. I took the liberty of looking up the historical weather patterns for Detroit on October the 18th of 2013, and I found that it was 41 degrees in the morning of October the 18th when this raid took place. The raid took place about 730 in the morning. All of these people, seven unrelated people, were herded out on the curb. There's a bunch of videotapes that were shown at the trial about this, and at one point Mr. Crumpton even begged the officer if he could go back in and put his drawers on. Basically he had no underwear on. It was a cold morning. He did have clothes on, your honor. Yes, yes. All of the individuals that were brought up did have clothing, but they weren't properly dressed because they were in bed. So he was taken out to the curb, and then as the agent questioned Mr. Crumpton, it seems like as he got closer to Mr. Crumpton, thinking about signing his waiver, he would take him back outside on the curb where it was cold. So there was something to what the judge concluded with regard to the little game or psychological coercion or whatever you want to call it. You said it was 41 degrees? 41 degrees, yes, during the hour between 7 and 8 o'clock in the morning. Correct. People in Detroit were a little tougher than that. We are a tough breed. However, that happened to be the coldest morning of the fall up to that point. The graph went like this down for the 7 o'clock in the morning and the 18th, so it was one of the first cold days, and I think it takes a little while for our skin to thicken up north. But in any event, that was the case. He was taken out. Mr. Crumpton appeared to conflate the search warrant with the Miranda warnings. He didn't really understand what he was waiving. He said, I don't want to waive any of my rights. If I sign this, then I waive my rights. No, that's not the case. All you have to do is sign this, and that has to do with your warnings. The search warrant is another issue. Isn't the officer correct that the search warrant is a different matter than the waiver of the Miranda warnings? Yes, I agree. Correct. So the fact that Crumpton was confused, how does that work in your favor then? Well, I think it goes to the voluntary and knowing waiver of his rights. He didn't know what he was waiving. He wanted to protect his rights. He didn't know what his rights were, and I think the Supreme Court has even said, as long as the defendant asserts his rights, there's certainly something to that. He doesn't have to be able to articulate each and every right, and I think that's what Crumpton was doing. When he was attempting to say, I don't want to sign any, I don't want to give up my rights, but yet he's being encouraged by this officer, oh, go ahead, this is all right, this is okay. But then Crumpton signs the waiver of the Miranda rights, and then the agent, Greg I guess is his name, starts asking Crumpton questions, and Crumpton does not answer any questions that have to do with drugs, but does answer this question that leads to this conviction on the ammunition charge. So why doesn't that show that Crumpton actually fully understood what his rights were, because he didn't answer any of the drug quantity questions, and Greg keeps pushing and pushing and pushing for, well, how much was it, how much was it worth, how much about the heroin, how much about this, and each one Crumpton is refusing to answer. Correct. Well, I think that just underscores my position that Crumpton actually did indicate that there were bullets in the house, not recognizing the fact that the admission regarding the bullets was much more detrimental to him than any admission to the drugs. But that shows he doesn't understand what he can be convicted of, as opposed to showing he doesn't understand his rights. Right. I think he was trying to protect his girlfriend as well. Was definitely trying to protect his girlfriend. Because the threat was that if you don't confess up here, we're going to go and talk to your girlfriend. Also, it was a... Well, but they said, they asked him whether his girlfriend was involved with the drugs, and he said no, she didn't have anything to do with the drugs. So he knows how to protect his girlfriend in that way. He could have equally said she doesn't have anything to do with the ammunition. He did admit that there was some marijuana in the house. He said you might find some marijuana back there. And again, I know this goes to the next argument, but this was a several multiple unit dwelling as well. And Crumpton is in the back. Much of the stuff that they found, which we'll discuss in the next... So let's save it for that. Okay, we'll save it for that. But that's part of my argument, Your Honor. The bottom line is that, well, I don't want to say the bottom line, but the judge in the court said that there was some coercion, and if you listen to the tape, of course, you'll see the different intonation. He ad-libbed. He basically said, look, I'm not beating you up. He was kind of further explaining the Miranda warnings and saying we're not doing this, let's be friends, kind of dropping... Did the government have any chance to make its arguments to the district judge before the district judge ruled on this? Not with regard to the second statement. My argument in the brief was that they could have filed a motion for reconsideration. The local court rule says if there's any palpable error or any legal error, a glaringly legal error, that ask the court to reconsider it and lay out its position with regard to why the court made an error. And why shouldn't you... I don't remember whether you were the trial counsel, but why shouldn't your client be viewed as waiving any right to object to the second statement when there were the comments at trial that indicated assent to the second statement coming in? Well, Your Honor, waiver is a pretty difficult remedy for the client, or at least I should say a burden for the client. It just appeared that the trial counsel, both with regard to the first statement and the second statement, simply did not carefully listen to the tapes like we all have. He, in his motion for judgment of acquittal, he basically said, mea culpa, mea culpa, I was wrong, I didn't pick it up, I didn't catch it. And from the point of the trial court's ruling, the trial court heard this for the first time, both on the first statement and the second statement, after he examined the second statement. There were two motions to suppress, and there were several other attempts on the part of Mr. Crumpton to have additional bases for motions to suppress that were rejected not only by counsel, but the court didn't permit them to. The court basically said, well, if you've got more grounds, bring them up on appeal, but I'm not going to allow you to bring these additional grounds for motions to suppress. So there was this constant conflict between Mr. Crumpton and his counsel. The first counsel was actually replaced, and when the second counsel came in, he filed another motion to suppress based on Rule 41, failure to leave the inventory at the house, and Mr. Crumpton was not satisfied with that. He continued to question his counsel and requested, even at the beginning of trial, the very first day of trial, Mr. Crumpton walked in court and said, Judge, can I have an adjournment of this case? I've got another motion to suppress. This sounds more like a 2255 argument. Well, Your Honor, I think the government's argued that there has to be reasonable cause for these kinds of situations. I think ineffective assistance of counsel is certainly cause to preclude procedural default on not only the Rule 12 issue, but we have a mechanism for that. That's 2255, and then we create a record and decide whether it was ineffective. But I think this goes back to the court's question, is the court able to cure this kind of an error at the trial court level? Is the court precluded from doing what he did on the Rule 12 issue at mid-trial, when finally the defense attorney cross-examined the agent and found out that he didn't give him the, in quotes, fifth warning? Or is the district judge precluded from taking this up in a motion for judgment of acquittal? It wasn't even raised, as I understand it, in the motion for judgment of acquittal except in a footnote. At least that's what your assessment is. Yes, it was not briefed fully. It was not. I would concede that, Your Honor. So it really is a sua sponte decision by the district court on the occasion of a motion for judgment of acquittal on other grounds. And the district court judge never finds good cause. He doesn't specifically, but there are cases, as the government has even cited in their brief, that it's implicit for the court to find good cause if it takes up such an issue. So, I mean, even though he didn't explicitly say that, he did make comments on the record at trial that, oh, you guys missed it. Neither of you brought this up to me, so on and so forth. So the judge is saying, well, this is first impression to me. If I had known this beforehand, obviously I would have taken it up and ruled on it. So essentially, Your Honor, I would ask that the court, in reviewing the district court's opinion and determination of judgment of acquittal, affirm the court and deny the appellee's appeal. Thank you. I'll be brief. I think there were a number of things there that went forth in order to coerce him. I'll concede it was probably 41. I actually thought it was a little colder than that, but the record, and granted there are no findings of this effect, but at least with respect to the judgment of acquittal, but the agent testified he brought him in once. So Mr. Crumpton, essentially he went outside to the curb, gave blanket Miranda warnings to all seven people that were lined up. Then he went inside, the agent went inside by himself and talked to the police. Came back out and talked to Mr. Crumpton because it was his house and said, look, is there anything in there that's dangerous? I want to let everyone know so they don't get hurt. At that point, Crumpton gives a brief statement and says there might be some bullets laying around, some syringes, a snake, but no guns. Albino python. Exactly. Goes inside, the agent goes inside. And some geckos. The agent goes inside, tells everyone so they don't get hurt, then comes back out and starts bringing people in one at a time. This is not a situation where Mr. Crumpton was taken in back and forth. Second, defense counsel never said mea culpa. I didn't raise this before. As I mentioned earlier, this is on a footnote. The court has read the judgment of acquittal. This is not a situation where he's saying, I missed all of this. He said it once with respect to the first Miranda warning. And it's not ineffective assistance of counsel to bring a legally frivolous motion. And the first, so even if there was an ineffective assistance somehow would excuse this. But that's the frivolousness having to do with the so-called fifth requirement, right? That would be part of it, but I think just in general there was never a situation where defense counsel said, I missed it on the second one. And I find that very misrepresentative of the record. The issue here is not whether the defendant knew the full consequences of waiving his Miranda rights. And I think you alluded to this earlier, whether he knew that he could be charged for the ammunition. Certainly he appreciated that the drugs were problematic for him. The issue is whether the defendant knew he could choose not to talk. And there is no question he did based on his selective invocation of Miranda repeatedly. Every time it came to drugs he declined to talk. Mr. Crumpton was concerned about his ability to, he wanted to make sure in waiving or in signing the waiver form he was not consenting to the search such that he could not challenge it. And I think that's also clear from the transcript. And finally, I would note that the judge focused heavily in deciding the adequacy issue on the subjective belief of Mr. Crumpton. I found no case law to support that this is a subjective belief. In fact, the Florida v. Powell suggests this is an objective standard. We're supposed to look at whether it was objectively reasonable, the warnings that were given, and they're supposed to be viewed in a comprehensive and common sense fashion, not a subjective fashion. And for all these reasons, we would ask that the judgment of acquittal be vacated and the verdict reinstated. Thank you. Thank you. Thank you both. The case will be submitted and I would like the clerk to call the next case.